[Cite as *State v. Frye*, 2023-Ohio-4150.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230002 |
| | | TRIAL NO. B-2204993 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| ZEE FRYE, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 17, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula E. Adams,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz,* for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} Defendant-appellant Zee Frye appeals his conviction for failing to provide periodic verification of his current address in violation of R.C. 2950.06. In two assignments of error, Mr. Frye challenges his conviction as against the manifest weight of the evidence and raises due process of law claims. Despite an erroneous, handwritten edit to the initial entry designating Mr. Frye's requirements to register as a sex offender, the trial below demonstrated that he was required to verify his address in January 2022 and that he failed to do so. Additionally, because he was required to register by operation of law, the trial court did not violate due process by not affording him a classification hearing. We therefore affirm his conviction.

I.

{¶2} In March 2006, Mr. Frye pleaded guilty to and was convicted of rape, leading to a seven-year prison sentence, in line with a negotiated plea agreement. In its sentencing entry, the court found that he was "a sexually oriented offender" under Megan's Law, obligating him to register as a sex offender annually for ten years. However, in a subsequent entry and notice designating and explaining Mr. Frye's registration duties, a mark is checked for "Sexually Oriented Offender" multiple times with handwritten notes after each indicating that he was an "aggravated" offender under R.C. 2950.01(D). Aggravated sex offenders are subject to a harsher penalty—to report every 90 days for life. Further, in one of the handwritten notes, the registration requirement of "ten (10) years" is scratched out and replaced with "lifetime."

{¶3} Mr. Frye was released from prison on January 4, 2013, seven years to the day after his initial arrest. In a May 2015 entry and notice of registration duties signed by the trial court and by Mr. Frye, the trial court explained that he was a sexually oriented offender required to report annually for ten years, rather than the lifetime requirement erroneously scratched onto the original entry. In the new entry,

labeled nunc pro tunc to March 20, 2006, the trial court memorialized that it informed Mr. Frye of his ten-year reporting requirement and concomitant duties as a sexually oriented offender.

{¶4} Fast forward to October 2022, and we find Mr. Frye indicted for failing to provide periodic verification of his current address in January 2022, about nine years after his release from prison, in violation of R.C. 2950.06. After a competency hearing, the court found him competent to stand trial. He waived his right to counsel and repeatedly insisted that he wanted to represent himself. Despite his firm assertion that "I waive any and all counsel," he refused to sign the waiver form, declaring, "I am not signing anything." After walking through a full colloquy with Mr. Frye, the court entered an order stating that he knowingly, intelligently, and voluntarily waived his right to counsel and that the court was allowing him to represent himself, even though he refused to sign the waiver form. The court appointed standby counsel, and Mr. Frye proceeded to represent himself at trial. The jury found him guilty of the reporting violation, and the court ultimately sentenced him to three years in prison. He now appeals, claiming that his conviction was against the manifest weight of the evidence and that he was denied due process by not receiving an offender classification hearing.

II.

A.

{¶5} We turn first to Mr. Frye's assertion that his conviction ran counter to the manifest weight of the evidence. In reviewing such a challenge, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The court, "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether[,] in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

3

ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The conviction will be reversed in only "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin* at 175; *State v. Sipple*, 2021-Ohio-1319, 170 N.E.3d 1273, ¶ 7 (1st Dist.).

{¶6} As the backbone for his argument, Mr. Frye attacks the state's use of leading questions in examining its witness, Deputy Caldwell, about his duty to register, he highlights "ambiguities" in the documentary evidence that were not satisfactorily explained, and he claims that the deputy's testimony failed to substantiate the date on which he was required to verify his current address.

{¶7} Mr. Frye's challenge to the state's leading questions, insofar as it can be construed as a manifest weight argument, is not persuasive. As an initial matter, it is not clear that he properly preserved this challenge for appeal. During the state's direct and redirect examination of Deputy Caldwell, Mr. Frye objected several times without providing a basis. But even if we construe his objections as challenging the leading nature of the state's questions, the questions were not prejudicial because the deputy was testifying to what the documentary evidence already revealed. Though he cross-examined the deputy, he did not marshal any evidence in his defense seeking to undermine the state's theory of the case. On redirect, the deputy restated that Mr. Frye's ten-year duty to register began on January 7, 2013, that even without any time tolled, his duty to register would have continued through January 2023, and that he failed to verify his current address in January 2022 (the indictment states on or about January 24, 2022). No evidence emerged at trial to contradict these facts, which were apparent from the state's evidence.

{¶8} Next, despite the erroneous, handwritten edits to the trial court's original entry and notice of registration duties, the court later resolved any ambiguities as to Mr. Frye's registration requirements. The documentary evidence established a

4

rape conviction on March 17, 2006, which made him a sexually oriented offender under Megan's Law. By operation of law, therefore, he had a duty to verify his current address annually for ten years. *See State v. Schilling*, Slip Opinion No. 2023-Ohio-3027, ¶ 25-26; *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 15-16, 18. The erroneous notations on the 2006 notification form indicating that his crime was "aggravated," subjecting him to a "lifetime" registration obligation, which was later corrected to a ten-year registration period in the court's May 2015 entry docketed nunc pro tunc to March 20, 2006, do not erase the actual, lesser registration requirements that he failed to meet.

{¶9}  In January 2013, prior to the correction, Mr. Frye left prison, restarting the clock on the ten-year registration period that had been tolled during his incarceration. *See* R.C. 2950.07(D). A few days later, he signed the sheriff's office's sex-offender-new-registration form. Further, the May 2015 entry, signed by Mr. Frye and by the trial court, contained information about his ten-year registration duties and provided that he had been informed of those duties and understood them. Additionally, a sheriff's adult-offender-information form signed by Mr. Frye indicated that he had verified his current address on January 8, 2021, and that he was required to provide verification of his current address on January 7, 2022. When he did not fulfill that obligation, a notification letter was sent to him on January 12, 2022, affording him a week to remedy the situation. He failed to verify his address consistent with the instructions, leading to his indictment in this case.

{¶10} Therefore, our review of the record in this case does not reveal a manifest miscarriage of justice such that Mr. Frye's conviction must be reversed and a new trial ordered. This is not the exceptional case in which the evidence weighs heavily against the conviction. Accordingly, we overrule the first assignment of error.

B.

**{¶11}** In his second assignment of error, Mr. Frye presents a due process challenge under the Ohio Constitution. He argues that the court violated his right to due process by convicting him of failing to verify his current address without affording him a classification hearing under the law as it existed at the time of his conviction.

**{¶12}** As a sexually oriented offender under Megan's Law, Mr. Frye, by operation of law, is subject to a mandatory ten-year registration duty. *See Schilling*, Slip Opinion No. 2023-Ohio-3027, at ¶ 25-26 ("A person's conviction for a sexually oriented offense under Megan's Law automatically classifies the person as a sexually oriented offender when the person does not qualify as a habitual sex offender or a sexual predator."); *Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, at ¶ 15-16, 18 (A person's classification as a sexually oriented offender under Megan's Law arises automatically from the person's conviction for a sexually oriented offense: "The trial court cannot 'determine' anything." (quoting *State v. Hayden*, 2d Dist. Montgomery No. 18103, 2000 Ohio App. LEXIS 4315, 7 (Sep. 22, 2000) (Young, J., dissenting))). In this situation, due process does not require a trial court to conduct a hearing to determine whether a defendant is a sexually oriented offender under Megan's Law, because that determination attaches as a matter of law. *Hayden* at paragraph two of the syllabus. Therefore, Mr. Frye is not entitled to a hearing, and no due process violation can flow from not affording him one. Even so, had the trial court granted him such a hearing, the lowest level of offender status that he could be assigned is that which he already holds—a sexually oriented offender with a ten-year registration requirement. Accordingly, we overrule his second assignment of error.

\* \* \*

**{¶13}** Having overruled Mr. Frye's two assignments of error, we affirm the trial court's judgment.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.